# EXHIBIT #1



# VOLKSWAGEN
## DEALER AGREEMENT

1. **APPOINTMENT.** Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("VWoA"), having a place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171 appoints **Lash Auto Group 2 LLC**, doing business under the fictitious name, **Volkswagen Oneonta**, having its place of business at **7517 State Highway 23, Oneonta, NY 13820**, as an authorized dealer in Volkswagen brand motor vehicles and genuine parts and accessories therefore. Accordingly, the parties agree as follows:

2. **STANDARD PROVISIONS.** The Dealer Agreement Standard Provisions (the "Standard Provisions"), the Dealer Operating Plan (the "Operating Plan") and the Volkswagen Dealer Operating Standards (the "Operating Standards") are part of this Agreement. Any term not defined in this Agreement has the meaning given such term in the Standard Provisions.

3. **OWNERSHIP AND MANAGEMENT.** To induce VWoA to enter into this Agreement, Dealer represents that the persons identified in the Statement of Ownership and Management, which is attached as Exhibit A, are Dealer's Owners and Executives. VWoA is entering into this Agreement in reliance upon these representations, and upon the continued provision by such persons of their personal services in fulfillment of Dealer's obligations under this Agreement. Accordingly, Dealer agrees there will be no change in Dealer's Owners without VWoA's prior written consent, and no change in Dealer's Executives without prior notice to VWoA.

4. **MINIMUM FINANCIAL REQUIREMENTS.** Dealer agrees to comply and maintain compliance with the minimum financial requirements established for Dealer annually in accordance with the Operating Plan and the Operating Standards. Throughout the term of this Agreement those minimum financial requirements are subject to revision by VWoA, after review with Dealer, in light of operating conditions and the development of Dealer's business and business potential.

5. **DEALER'S PREMISES.** VWoA has approved the location of Dealer's Premises as specified in the Dealer Premises Addendum, attached as Exhibit B. Dealer agrees that, without VWoA's prior written consent, it will not (a) make any major structural change in any of Dealer's Premises, (b) change the location of any of Dealer's Premises or (c) establish any additional premises for Dealer's Operations.



VOLKSWAGEN

6. **Exclusion of Warranties.** EXCEPT FOR DISTRIBUTOR'S WARRANTIES, AND EXCEPT AS PROVIDED IN ARTICLE 9(1) OF THE STANDARD PROVISIONS, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OR OBLIGATIONS OF THE MANUFACTURER OR DISTRIBUTOR AS TO THE QUALITY OR CONDITION OF AUTHORIZED PRODUCTS, OR AS TO THEIR MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND, TO THE EXTENT PERMITTED BY LAW, DEALER WILL EXCLUDE ANY AND ALL SUCH WARRANTIES AND OBLIGATIONS IN ITS SALES OF AUTHORIZED PRODUCTS.

7. **Term.** The term of this Agreement begins on the date of its delivery to Dealer or on January 1, 1997, whichever is later. This Agreement shall continue in effect until terminated by either party or superseded by a new Dealer Agreement with VWoA, whichever is earlier.

8. **Governing Law.** This Agreement will be construed in accordance with the laws of the State of **New York**. Should the performance of any obligation under this Agreement violate any valid law of such jurisdiction, then this Agreement shall be deemed modified to the minimum extent necessary to comply with such law.

9. **Additional Terms and Conditions.** The Addenda attached hereto as Exhibits **A** through **C** are part of this Agreement, and are incorporated into this Agreement by this reference. Each may be canceled or superseded at any time by mutual agreement of Dealer and VWoA, through the later execution by both parties of a replacement, which then shall be deemed part of this Agreement.

**Dated:** Feb. 13, 2012.

**Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc.**

By: [signature]
Director – Northeast Region

By: [signature]
Robert H. Kim
General Manager – Network Operations

**Dealer**

By: [signature]
Jeffrey Lash
President



# VOLKSWAGEN

## STATEMENT OF OWNERSHIP AND MANAGEMENT

EXHIBIT A
TO DEALER AGREEMENT DATED
Feb. 13, 2012.

1. Dealer entity name:

   **Lash Auto Group 2 LLC d/b/a Volkswagen Oneonta**

2. Principal place of business:

   **7517 State Highway 23, Oneonta, NY 13820**

3. Dealer is a
   - ☐ Proprietorship
   - ☐ Partnership
   - ☐ Limited Liability Company
   - ☒ Corporation, incorporated on **September 16, 2011** under the laws of the State of **New York.**
   - ☐ Other:

4. The following persons are the beneficial and record owners of Dealer:

| Name and Address of Each Record and Beneficial Owner of Dealer | If a Corporation, Number and Class of Shares Number | Class | Percentage of Ownership of Record in Dealer |
|---|---|---|---|
| DJD Holdings 2 LLC<br>7517 State Highway 23<br>Oneonta, NY 13820 | | Common | 100.0 % |

5. The following persons are Dealer's Officers:

| Name and Address | Title |
|---|---|
| Jeffrey Lash<br>376 Tarrytown Road<br>White Plains, NY 10607 | President |
| Danielle Lash<br>7517 State Highway 23<br>Oneonta, NY 13820 | Secretary |
| David Gentile<br>7517 State Highway 23<br>Oneonta, NY 13820 | Treasurer |



**VOLKSWAGEN**

| | |
|---|---|
| Steven Adam<br>7517 State Highway 23<br>Oneonta, NY 13820 | Officer |
| Rina Chernaya<br>7517 State Highway 23<br>Oneonta, NY 13820 | Officer |
| Robert Kessler<br>7517 State Highway 23<br>Oneonta, NY 13820 | Officer |

6. The following person is the Authorized Representative of Dealer. As such, this person is an agent of Dealer, and VWoA is entitled to rely on this person's authority to make all decisions on behalf of Dealer with respect to Dealer's Operations.

| **Name** | **Title** |
|---|---|
| Jeffrey Lash<br>376 Tarrytown Road<br>White Plains, NY 10607 | President |

Dealer hereby certifies that the foregoing information is true and complete as of the date below. VWoA has entered into this Agreement in reliance upon the qualifications, and the continued provision of personal services in the ownership and management of Dealer by, the persons identified above.

This Exhibit cancels any prior Statement of Ownership and Management.

**DATED:** Feb. 13, 2012.

**VOLKSWAGEN OF AMERICA, INC., AN OPERATING UNIT OF VOLKSWAGEN GROUP OF AMERICA, INC.**

BY: Mark Hammond
Director – Northeast Region

BY: ______________________
Robert H. Kim
General Manager – Network Operations

**DEALER**

BY: ______________________
Jeffrey Lash
President



# VOLKSWAGEN

## DEALER PREMISES ADDENDUM

**EXHIBIT B**
**TO DEALER AGREEMENT DATED**
Feb. 13, 2012.

1. Dealer entity name:

   **Lash Auto Group 2 LLC d/b/a Volkswagen Oneonta.**

2. VWoA has approved the location of the following premises, and no others, for Dealer's Operations:

   a. Sales Facilities:

      **7517 State Highway 23, Oneonta, NY 13820**

   b. Authorized Automobile Storage Facilities:

      **7517 State Highway 23, Oneonta, NY 13820**

   c. Service Facilities:

      **7517 State Highway 23, Oneonta, NY 13820**

   d. Genuine Parts Storage Facilities:

      **7517 State Highway 23, Oneonta, NY 13820**

   e. Used Car Lot:

      **7517 State Highway 23, Oneonta, NY 13820**

Dealer hereby certifies that the foregoing information is true and complete as of the date below.

This Exhibit cancels any prior Dealer Premises Addendum.

DATED: Feb. 13, 2012.

VOLKSWAGEN OF AMERICA, INC., AN OPERATING UNIT OF VOLKSWAGEN GROUP OF AMERICA, INC.

BY: [signature]
Director – Northeast Region

BY: [signature]
Robert H. Kim
General Manager – Network Operations

DEALER

BY: [signature]
Jeffrey Lash
President



# VOLKSWAGEN

## CORPORATE SHAREHOLDER ADDENDUM

EXHIBIT C
TO VOLKSWAGEN DEALER AGREEMENT
DATED Feb. 13, 2012.

1. In order to induce Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("VWoA") to enter into this Agreement, Dealer represents as follows:

a. **DEALER'S OWNER**

The following corporation ("Dealer's Owner") is the beneficial and record owner of Dealer:

| Name and Address | Percentage of Ownership of Record in Dealer |
|---|---|
| DJD Holdings 2 LLC<br>7517 State Highway 23<br>Oneonta, NY 13820 | 100.0 % |

b. **SHAREHOLDERS OF DJD Holdings 2 LLC**
The following persons ("Shareholders of Dealer's Owner") are the beneficial and record owners of all the outstanding shares of stock of Dealer's Owner:

| Name and Address of Each Record and Beneficial Owner of Dealer's Owner | Percentage of Ownership of Record in Dealer's Owner |
|---|---|
| CKGF Lash Group | 90.0% |
| Steven Adam | 10.0% |

b. **SHAREHOLDERS OF CKGF Lash Group**
The following persons ("Shareholders of Dealer's Owner") are the beneficial and record owners of all the outstanding shares of stock of Dealer's Owner:

| Name and Address of Each Record and Beneficial Owner of Dealer's Owner | Percentage of Ownership in CKGF Lash Group |
|---|---|
| Jeffrey Lash | 30.0% |
| McAnna Limited Partnership | 25.0% |
| Rina Chernaya | 12.5% |
| Diana Chernaya | 12.5% |
| Robert Kessler | 9.5% |

VOLKSWAGEN

| | |
|---|---|
| David Gentile | 9.5% |
| Gerald Francese | 1.0% |

c. **SHAREHOLDERS OF McAnna Limited Partnership**
The following persons ("Shareholders of Dealer's Owner") are the beneficial and record owners of all the outstanding shares of stock of Dealer's Owner:

| Name and Address of Each Record and Beneficial Owner | Percentage of Ownership General Shares | Percentage of Ownership Limited Shares |
|---|---|---|
| Mesa Holdings LLC | 1.0% | 20.1% |
| CKES LLC | N/A | 78.9% |

d. **SHAREHOLDERS OF CKES LLC**

The following persons ("Shareholders of Dealer's Owner") are the beneficial and record owners of all the outstanding shares of stock of Dealer's Owner:

| Name and Address of Each Record and Beneficial Owner | Percentage of Ownership Class A Voting | Percentage of Ownership Class B Non-Voting |
|---|---|---|
| 1996 Elina Cherney Trust | 50.0% | N/A |
| 1996 Stephanie Chernaya Trust | 50.0% | N/A |

e. **SHAREHOLDERS OF Mesa Holdings LLC**

The following persons ("Shareholders of Dealer's Owner") are the beneficial and record owners of all the outstanding shares of stock of Dealer's Owner:

| Name and Address of Each Record and Beneficial Owner | Percentage of Ownership Class A Voting | Percentage of Ownership Class B Non-Voting |
|---|---|---|
| CKES LLC | 1.0% | 98.0% |
| 1996 Elina Cherney Trust | 0.5% | N/A |
| 1996 Stephanie Chernaya Trust | 0.5% | N/A |

VWoA has entered into this Agreement in reliance upon these representations, and upon the qualifications and continued performance of personal services in the ownership and management of Dealer, by the Shareholders of Dealer's Owner. Accordingly, Dealer agrees there will be no change in Dealer's Owner or the Shareholders of Dealer's Owner without VWoA's prior consent. Dealer agrees that VWoA has the right to terminate this Agreement with immediate effect in the event of any such change without prior written consent.



VOLKSWAGEN

2. Article 10(2) of the Standard Provisions is amended by adding at the end thereof the following sentence:

> "Upon VWoA's written request, Dealer will also cause Dealer's Owner to submit to VWoA a financial and operating statement reflecting the consolidated operations of Dealer's Owner for the preceding month and from the beginning of the calendar year to the end of the preceding month."

3. Articles 12(4), 12(4)(a) and 12(4)(b) of the Standard Provisions are amended in their entirety to read as follows:

> "(4) Article 14(1)(a) notwithstanding, in the event of the death of any Shareholders of Dealer's Owner, VWoA will not terminate this Agreement by reason of such death if:
>
> > "(a) The shareholder's interest in Dealer passes directly as specified in any Successor Addendum to this Agreement; or"
> >
> > "(b) The shareholder's interest in Dealer passes directly to his or her surviving spouse or children, or any of them, and (i) Dealer's Authorized Representative remains as stated in the Statement of Ownership and Management or (ii) within 90 days after the death of such owner Dealer appoints another qualified individual as Dealer's Authorized Representative; provided however, that in this event VWoA will evaluate Dealer's performance during the 12 months following the owner's death. After the expiration of this 12-month period, VWoA will review with Dealer the changes, if any, in the management or equity interests of Dealer required by VWoA as a condition of extending this Dealer Agreement with Dealer. Any new Dealer Agreement entered into pursuant to this paragraph will be in substantially the same form as the Dealer Agreements then currently offered by VWoA to its dealers in Authorized Automobiles generally."

4. Articles 14(1)(a) and (b) of the Standard Provisions are hereby amended in their entirety to read as follows:

> "(a) Death of any Shareholders of Dealer's Owner or any change, whether voluntary or by operation of law, in the record or beneficial ownership of Dealer or Dealer's Owner without VWoA's prior written consent; any change in Dealer's Executives without prior notice to VWoA; or the failure of Dealer's Executives to continue to manage Dealer's Operations (unless, in any of these cases, the provisions of Article 12(4) above have been satisfied);"
>
> "(b) Dissolution or liquidation of Dealer or Dealer's Owner; if a partnership or corporation;".

5. Article 14(1)(h) of the Standard Provisions is hereby amended in its entirety to read as follows:

> "(h) Conviction of Dealer, Dealer's Owner, any of Dealer's Executives, any executive of Dealer's Owner or any Shareholders of Dealer's Owner of a felony or any misdemeanor involving fraud, deceit or an unfair business practice, if in



VOLKSWAGEN

VWoA's opinion such conviction may adversely affect the conduct of Dealer's business, or be harmful to the good will of the Manufacturer or VWoA or to the reputation and marketing of Authorized Products;".

6. Article 14(1)(i) of the Standard Provisions is hereby amended in its entirety to read as follows:

"(i) any material misrepresentation by Dealer's Owner, Dealer's Executives, any executive of Dealer's Owner or any Shareholders of Dealer's Owner as to any fact relied upon by VWoA in entering into this Agreement.

7. Article 14(1)(k) of the Standard Provisions is hereby amended by adding the following phrase to the end thereof:

"or Dealer's Owner."

8. Article 14(2)(a) of the Standard Provisions is hereby amended in its entirety to read as follows:

"(a) Any disagreement or personal difficulties among Dealer's Owner, any of Dealer's Executives, any executive of Dealer's Owner or any Shareholders of Dealer's Owner, which in VWoA's opinion may adversely affect the conduct of Dealer's business, or the presence in the management of Dealer of any person who in VWoA's opinion does not have appropriate qualifications for their position;".

9. Article 14(2)(b) of the Standard Provisions is hereby amended in its entirety to read as follows:

"(b) Impairment of the reputation or financial standing of Dealer, Dealer's Owner, any of Dealer's Executives, any executive of Dealer's Owner or any Shareholders of Dealer's Owner, or ascertainment by VWoA of any fact existing which tends to impair such reputation or financial standing; or".

10. Article 14(3) of the Standard Provisions is hereby amended in its entirety to read as follows:

"(3) Except to the extent a greater notice period is required by any applicable statute, VWoA has the right to terminate this Agreement upon 90 days' notice in the event of the breach by Dealer, Dealer's Owner, or any Shareholders of Dealer's Owner of any obligation of Dealer, Dealer's Owner or any Shareholders of Dealer's Owner pursuant to this Agreement or any other agreement between VWoA or any of its subsidiaries or affiliates and Dealer, Dealer's Owner or any Shareholders of Dealer's Owner, other than those enumerated in Articles 14(1) or 14(2) above."

11. Article 16 of the Standard Provisions is hereby amended by adding at the end thereof the following:

"(20) 'Shareholders of Dealer's Owner' includes all the persons named in Paragraph 1(b) of the Corporate Shareholder Addendum which is attached to this Agreement as Exhibit C as beneficial or record owners of Dealer's Owner, as well as any other person who acquires or succeeds to any such beneficial interest or record ownership in accordance with the terms of this Agreement."



**VOLKSWAGEN**

DATED: Feb. 13, 20 12.

VOLKSWAGEN OF AMERICA, INC., AN OPERATING UNIT OF
VOLKSWAGEN GROUP OF AMERICA, INC.

BY: ______________________
Director – Northeast Region

BY: ______________________
Robert H. Kim
General Manager – Network Operations

DEALER

BY: ______________________
Jeffrey Lash
President



# VOLKSWAGEN

## HOLD HARMLESS AGREEMENT AND COVENANT NOT TO SUE

AGREEMENT (the "Agreement") by and among Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("VWoA"), and **Lash Auto Group 2 LLC** d/b/a **Volkswagen Oneonta**, ("Dealer").

WHEREAS, at the request of Dealer and Shareholder(s), VWoA has agreed to enter into a Volkswagen Dealer Agreement (the "Dealer Agreement") with Dealer;

WHEREAS Dealer and Shareholder(s) fully recognize the financial risks they are taking in establishing an automobile dealership and Dealer and Shareholder(s) understand that there is no assurance that such dealership will be successful or profitable; and

WHEREAS with the knowledge that VWoA is expressly reserving all its rights under the provisions of the Dealer Agreement with respect to the operations of Dealer, Dealer and Shareholder(s) have requested that VWoA issue the Dealer Agreement to Dealer.

NOW, THEREFORE, to induce VWoA to enter into a Dealer Agreement with Dealer and for other valuable consideration, Dealer and Shareholder(s), jointly and severally, hereby agree as follows:

1. Dealer and Shareholder(s), jointly and severally, shall save harmless and indemnify VWoA, its agents, employees, officers, directors, parents, subsidiaries, successors and assigns (hereinafter collectively referred to as "VWoA and its Employees"), from any and all losses, damages, claims, actions, costs, expenses or judgments, of any kind of nature, regardless of source or cause, arising out of or resulting from any losses incurred in the operations of Dealer, excepting only losses or damages caused directly by a violation of applicable law by VWoA, or breach by VWoA of its contractual responsibilities provided in the Standard Provisions of the Volkswagen Dealer Agreement.

2. Dealer and Shareholder(s), jointly and severally, hereby covenant and agree not to sue VWoA and its Employees or any of them with respect to any matter, cause or thing of any nature or description arising out of or resulting from the operations of Dealer, if the allegations of said suit or action relate in any manner to losses sustained by Dealer or Shareholder(s) because of the operations of Dealer, excepting only matters involving debits and credits between VWoA and Dealer (such as warranty claims) matters involving losses caused directly by a violation of applicable law by VWoA; and matters involving losses caused directly by a breach by VWoA of its contractual responsibilities as provided in the Standard Provisions of the Volkswagen Dealer Agreement.

3. In the event that at any time hereafter Dealer or Shareholder(s) file any action or administration proceeding against VWoA and its Employees or any of them demanding relief for any alleged losses or damages hereafter sustained by Dealer or Shareholder(s) arising out of or resulting from the operations of Dealer, and excepting only the matters set forth in Paragraphs 1, 2 and 5 of this Agreement, then and in that event this Agreement shall be complete defense to any such action or administrative proceeding; (a) Dealer and Shareholder(s) jointly and severally, shall, upon request by VWoA, immediately pay VWoA the amount of any money judgment entered against VWoA and its Employees or any of them, together with all court costs imposed and reasonable attorneys' fees expended by VWoA in the defense of such action or administrative proceeding;